

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
NOV 30 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## NORTHERN DIVISION

**GEORGIA ELLEN HEAD & ANGELA MARIE WARD**

   **Plaintiff,**

**V.**                                            **COMPLAINT**

**THE STATE OF MISSISSIPPI**              **Civil Action No:**

**Defendant**                             3:18-CV-831-CWR-LRA

## INTRODUCTION

   1.  Georgia Allen Head & Angela Marie Ward bring this action against the
state to enforce the right of adults with mental illness to receive services in
the most integrated setting appropriate to their needs. The State
discriminates against adults with mental illness by administrating and
funding this program and services for those individuals in a manner that
has resulted in their repeated, prolonged, and unnecessary institution in
state-run psychiatric hospitals, and place them at serious risk of such
institutionalization in violation of TITTLE 2 of the Americans with Disability
Act of 1990 ( the"ADA"), 42 U.S.C.§§ section 12131-13134.

2.  Every day hundreds of adult with mental illness are unnecessarily and illegally segregated in Mississippi's state-run psychiatric hospitals or are at serious risk of entering these institutions. They enter and remain in these isolating institutions because the State of Mississippi ("The State") has failed to provide them significant community- based Mental Health Services. **(" Georgia Ellen Head has filed victim to these cruel and inhumane acts since the late 80's to hide serious corruption on the Mississippi Gulf Coast and recent since December 2017.")**

3.  While confined in these Institute adults with mental illness are unnecessarily cut off from their non-disabled family members friends and others in the community. **("Georgia Ellen Head has been Alienated from her family and lost her home due to the acts and lies of South Mississippi State Hospital! Behind the findings of Medicaid fraud.")**

4.  By virtue of their institutionalization these adults with disabilities are deprived of meaningful opportunities of choice friends, work, or make choices about their day-to-day activities, such as what and when to eat when to make a phone call and where to go on a walk. **(" Georgia Ellen Head has missed out on family time and holidays with the family. Normal activities that take place every year. If whoever owns her agrees that she is allowed to call her family it may be once a week longest time has been 30 day without communication outside the facilities.")**

5.  These individuals experience a type of "[u]njustified isolation" that you Supreme Court held "is property regarded as discrimination based on disability." Olmstead v. L.C., 527 U.S. 581, 597 (1999)

6.  Title 2 of the ADA prohibits the unjustified segregation of persons with disability see  42 U.S.C. § 12132; Olmstead, 527 U.S. at 597, and require State and other public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disability." 28 C.F.R. § 35.130(d) (2010).

7.  Life in an institution leads not only to stigma and isolation, but also regression, learned helplessness, and physical harm. It is Well recognized that integrated, Community- base services enhance and support recovery from mental illness. **(" Georgia Ellen Head has suffer from serious depression not being able to be in her own home and with her family!")**

8.  In 2003, the president of the United States put together a committee tasked with studying the national Mental Health Services delivery system and making recommendations that would enable adult with serious mental illness to live, work, learn, and participate fully in their communities. The committee concluded that "[m]ore individuals could recover from even the most serious mental illness if they had access to their communities two treatment and support that are tailored to their needs." New Freedom Commission on mental health, Achieving the Proise: Trensfforming Mental Health Care in

America, Final Report 5, Pub No. SMA03-3831 (2003)

9.   In the Community, individuals have the opportunity to learn and practice skills that enable Independence. Further, people typically prefer to live in the community, and are more motivated to engage in treatment and their home. **("Georgia Ellen Head has lost motivation and feels hopeless due to the unjustifiable incarceration!")**

10.   The State of Mississippi has long recognized that it unnecessarily relies on institutions and fails to provide significant service to enable adults with mental illness who live in their community. **("Medicaid records will show the State fails to provide significant Services due to the fact, they can make more money by incarceration of an individual! Please see the Medicaid fraud that is being committed by the local Mental Health providers.")**

11.   In 2008, do Mississippi legislators joint committee on Performance Evaluation and Expenditure Review ("Peer") found that "[a]lthough the Mental Health environment in the United States has dramatically changed from an Institution- based system to a community – based system in recent years, Mississippi mental health system has not reflected the shift in services delivery methods." Joint Legislative Committee on PEER, Report to the miss. Legislature No. 511, <u>Planning for the Delivery of Mental Health Services in Mississippi: A Policy Analysis</u> 1 (2008) Four years ago , the Committee recommended that "[t]he Department a Mental Health and Mississippi State

Hospitals should gather the appropriate data set regarding the Mental Health needs of the hospital, the communities, and estate in order for the development to articulate it's community- base services struggling, design its implementation process, and reallocate its resources." Joint Legislative Committee on PEER, Report to theMiss. Legislature No. 593, <u>Staffing of Psychologist at the Mississippi State Hospital in a Changing Mental Health Services Delivery Environment</u> 1 (2015) **("Its 2018 and nothing has changed in the Mental Health System for Mississippi State Hospitals and the patients that reside in them. Patients are being held against their will for a profit of the facilities state-funded money. Georgia Ellen Head has seen this first-hand, being pushed through every single facility that is funded by the Government at the taxpayers expense. Georgia Allen Head has been being held against her will since December 19,2017.")**

12. Mississippi continues to concentrate its State spending on Mental Health on institutional care. **("Without real Merit of proof.")(" Georgia Allen Head has been a victim of the State of Mississippi since the 80's. The State makes more money per head that is institutionalized. While a patient is institutionalized these smaller Mental Health Community base facilities can't commit Medicaid fraud upon the person that is institutionalized undetected!") Please see all Medicaid statements.**

13. In fiscal year 2015, the Mississippi Department of Mental Health spent $202.5 million on its State Hospitals, which includes the Mississippi State

Hospital North Mississippi State Hospital, East Mississippi State Hospital, and South Mississippi State Hospital. It provided about 25 million in Grants for intensive Community-Based Services that could be used to divert people from hospitals to support these individuals in the community that year. **("with over 200 million dollars being spent each year for the Mental Health State run facilities, you would think the patients wouldn't feel like they were incarcerated in prison being at these locations.") ("There is no way the taxpayers money is being spent on Rehabilitation treatment that is effective for the patient[s].")**

14.  Community-based Mental Health Services include psychiatric service, individual and group therapy, intensive case management, crisis Services, peer support services, Assertive Community Treatment, support employment, and permanent supported housing. **(" Georgia Ellen Head had experience very poor care an interaction with community-based mental health services, via the reactions of Gulf Coast Mental Health over the past years. The interactions with the state-run facilities try to separate the mentally ill from their families with alternative in State facilities.")("Over the years with the community-based Georgia Ellen Head was giving maybe 15 minutes of the State workers time and asked to sign so they can get paid $100 plus for 15 minutes to do nothing in regards to her actual Mental Health issues.")**

15.  These Community-Based Services for adults with mental illness already exists within Mississippi Mental Health Services System, but they are not

provided unfortunately throughout the state system and even where they are available, they are not available and significant quantities to meet the need. **(" the staff that is sent out for community-based treatment are not educated and or could care less about each patient's individual needs. They are only out to get their notepad signed for payment for 5 to 15 conversation with each individual patient.")**

16.   If administered appropriately, these Community-Based Services would be both cost-efficient and capital of meeting the need of adults with mental illness. **("The local community based Services finds it easier to have a patient committed to the state rather than deal with the issues at hand in the community. It's also easier for them to commit Medicaid fraud and collect more money for services not issued while patients are locked in mental Institutes. In some cases it seems to be deliberate that the community base facilities intentionally plays with a patient medication enough to get them off-balance to have them locked away this is been going on for many years") See Georgia Ellen Head's records from Gulf Coast Mental Health as well as Pharmacy pickup of medications.**

17.   The United States seeks to vindicate the rights of adults with mental illness in Mississippi's state-run psychiatric hospitals, and those at serious risk of entering into these institutions. **(" Let me State again this is 2018 in the United States has done nothing in regards to the already open lawsuit against the state of Mississippi and patients are falling victims to this everyday.")**

18.  These State- run facilities have programs within the facility that commits Medicaid fraud. Any individual person[s] can be worth anywhere from $50 thousand to $90 thousand dollars per only a three week stay alone the side of the State founded money.

19.  2010 Mississippi Code

**TITLE 11 – CIVIL PRACTICE AND PROCEDURE**

**Chapter 44 – Compensation to Victims of Wrongful Conviction and Imprisonment.**

11-44-1 - Legislative findings and intent.

**Section 11-44-1. Legislative findings and intent.**

The Legislature finds that innocent persons who have been wrongly convicted of felony crimes and subsequently imprisoned have been uniquely victimized, have distinct problems reentering society, and should be compensated. In light of the particular and substantial horror of being imprisoned for a crime one did not commit, the Legislature intends by enactment of the provisions of this chapter that innocent people who are wrongfully convicted be able to receive monetary compensation.

**Sources:** Laws, 2009, ch. 472, section 1, eff from and after July 1, 2009.

20.  **Mississippi Kidnapping/Abduction Laws.** ... § 97-3-53, a person is guilty of **kidnapping** if he without lawful authority and with or without intent to secretly confine, forcibly seizes and confines any other person, or kidnaps any other person with intent to cause victim to be confined or imprisoned against his or her will.

21. 2013 Mississippi Code
Title 97 - CRIMES
Chapter 7 - CRIMES AGAINST SOVEREIGNTY OR
ADMINISTRATION OF GOVERNMENT
§ 97-7-10 - Fraudulent statements and representations

**Universal Citation:** MS Code § 97-7-10 (2013)

(1) Whoever, with intent to defraud the state or any department, agency, office, board, commission, county, municipality or other subdivision of state or local government, knowingly and willfully falsifies, conceals or covers up by trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall, upon conviction, be punished by a fine of not more than Ten Thousand Dollars ($ 10,000.00) or by imprisonment for not more than five (5) years, or by both such fine and imprisonment.

(2) This section shall not prohibit the prosecution under any other criminal statute of the state.

22. 2013 Mississippi Code
Title 97 - CRIMES
Chapter 3 - CRIMES AGAINST THE PERSON
§ 97-3-54.4 - Anti-Human Trafficking Act; definitions

**Universal Citation:** MS Code § 97-3-54.4 (2013)

For the purposes of Sections 97-3-54 through 97-3-54.4, the following words and

phrases shall have the meanings ascribed herein unless the context clearly requires otherwise:

(a) "Actor" means a person who violates any of the provisions of Sections 97-3-54 through 97-3-54.4.

(b) "Blackmail" means obtaining property or things of value of another by threatening to (i) inflict bodily injury on anyone; (ii) commit any other criminal offense; or (iii) expose any secret tending to subject any person to hatred, contempt or ridicule.

(b) "Commercial sexual activity" means any sex act on account of which anything of value is given to, promised to, or received by any person.

(c) "Financial harm" includes, but is not limited to, extortion as defined by Section 97-3-82, Mississippi Code of 1972, or violation of the usury law as defined by Title 75, Chapter 17, Mississippi Code of 1972.

(e) "Forced labor or services" means labor or services that are performed or provided by another person and are obtained or maintained through an actor:

(i) Causing or threatening to cause serious harm to any person;

(ii) Physically restraining or threatening to physically restrain any person;

(iii) Abusing or threatening to abuse the law or legal process;

(iv) Knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person;

(v) Using blackmail;

(vi) Causing or threatening to cause financial harm to any person; or

(vii) Using any scheme, plan or pattern intended to cause any person to believe that, if

the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

(f) "Labor" means work of economic or financial value.

(g) "Maintain" means, in relation to labor or services, to secure continued performance thereof, regardless of any initial agreement on the part of the trafficked person to perform such labor or service.

(h) "Minor" means a person under the age of eighteen (18) years.

(i) "Obtain" means, in relation to labor or services, to secure performance thereof.

(j) "Services" means an ongoing relationship between a person and the actor in which the person performs activities under the supervision of or for the benefit of the actor or a third party. Commercial sexual activity and sexually-explicit performances shall be considered services under Sections 97-3-54 through 97-3-54.4.

(k) "Sexually-explicit performance" means a live or public act or show intended to or satisfy the sexual desires or appeal to the prurient interests of patrons.

(l) "Trafficked person" means a person subjected to the practices prohibited by Sections 97-3-54 through 97-3-54.4 and is a term used interchangeably with the terms "victim of trafficking" and "trafficking victim."

(m) "Venture" means any group of two (2) or more individuals associated in fact, whether or not a legal entity.

(n) "Sexually oriented material" shall have the meaning ascribed in Section 97-5-27, Mississippi Code of 1972. **("Holding Georgia Ellen Head in State-run facilities is a form of human trafficking. Due to the back the state is receiving government-funded money to do so off of the taxpayers back")** This is a serious issue in the state

of Mississippi as well as in the whole United States.

## Jurisdiction And Venue

23.  The court has jurisdiction over this action under Title II of the ADA, 42 U.S.C. section 12133, and 28 U.S.C section 1331, 1345. The court may grant sought in the action pursuant to 28 U.S.C section 2201-2202. The United States has the ability to seek a remedy for violations of Title II of the ADA, 42 U.S.C. Section 12133-13134; 28 C.F.R. section 35.170-174, 190(e).

24.  The United States is authorized to initiate this action pursuant to the Civil Rights of Institutionalized Person Act of 1980 ("CRIPA"), 42 U.S.C. section 1997.

25.  The attorney general has certified that all pre-filled requirements specific in 42 U.S.C. section 1997 B have been met. The Certificate of the Attorney General is appended to this Complaint as Attachment A and is incorporate herein. **(" The Attorney General has failed Georgia Ellen Head and her daughter with complaints that serious abuse is still in practice at these State-run facilities, they have allowed the abuse to continue for 10 months. The Attorney General has failed to honor Georgia Ellen Head's Rights as a human being, and as a Mental Health patient that is having her Rights Violated on a Daily basis.. All for The State run facilities to continue to collect state-funded**

 **Money while defrauding the Government and the Taxpayers that split this bill.")**

26.  Venue is proper in the district pursuant to 28 U.S.C Section  1391(b), given that a substantial part of the act and  omissions given rise to this action occurred in the Southern District of Mississippi.

### PARTIES

27.  Plaintiff is Georgia Ellen Head - Angela Ward

*28.  Defended State of Mississippi, is  a "public entity" within the meaning of* the ADA, 42 U.S.C. section 12131(1), and is therefore subject to Title II of the ADA, 42 U.S.C. Section 12131 et seq., and its implementing regulations, 28 C.F.R. pt. 35.

29.  The State of Mississippi owns and operates four psychiatric hospital, which are institutions under the meaning of 42 USC section 1997(1). The State administers and phone services for adults with mental illness through various private agencies and departments

30.  Mississippi Department of Medicaid manages the State's Medicaid Program, which include coverage of Mental Health Services to Medicaid- enrolled adults with mental illness.

31.  Mississippi Department of Mental Health is the state agency responsible for providing Mental Health Services to the citizens of Mississippi.

32.  As part of its mental health system, the Department of Mental Health provide State funding, state ran psychiatric residential services for adults with mental illness at 4 psychiatric hospitals and one resident Center.

33.  The Department of Mental Health also regulates, overseas, and provides funding for community-based mental health services for adults with mental illness.

34.  The Mississippi home corporation was created by the Mississippi home corporation Act of 1989 to address affordable housing needs in Mississippi. The Mississippi home corporation is Mississippi's design Housing Finance Agency and its responsibility for developing private and public partnership throughout the state to increase affordable housing stock, including for adults with mental illness. The Mississippi home corporation is responsible for implementing the State's integrated permanent Supportive Housing program. See housing bill No. 1563 (2015).


## STATUTORY AND REGULATOR BACKGROUND

35. Congress elected the ADA in 1990 " to provide a clear and

comprehensive National mandate for the elimination of discrimination against individuals with disabilities [.]" 42 U.S.C. section 12101 (b)(1). It found that " historically, society has tended to isolate and segregate individuals with disabilities, and, dispite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem [.]" 42 U.S.C. section 12101 (a)(2). It further found that "discrimination against individuals with disability persist in ... institutionalization... and across to public services[,]" 42 U.S.C. section 12101 (a)(3), and that " individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion..., segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities [.]"  42 U.S.C. section 12101(a)(5).

36.   Congress concluded that " the national proper goals regarding individuals with disabilities are to assure quality of opportunity, full participation, Independent Living, and economic self-sufficient for such individuals" and " the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disability to opportunity to complete on an equal basis and to pursue these opportunities for which are free Society is justifiably famous, and cost the United States billions of dollars and unnecessary expenses resulting for dependency and non-productivity." 42 U.S.C. section 12101 (a)(7)-(8) (2008).

37.  For these reasons, Congress prohibited discrimination against individuals with disabilities by public entities: "[N]o qualified individuals with a

disability shower, the reason of such disability, be excluded from participation and or be deny the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. section 12132.

38. Title II of the ADA prohibits discrimination on the basis of disability by public entities. This encompass the State of Mississippi, its agencies, and it's Community Mental Health Systems, because a " public entity" includes any state or local government, as well as any Department, agency, or other instrumentality of a state or local government, and it applies to all services, programs, and activities provided or made available by public entities, such as though contractual, licensing, or other arrangements. 42 U.S.C. section 12131 (1) and section 12132.

39. Congress decided the Attorney General to issue regulations implementing Title II of the ADA. 42 U.S.C. Section 12134. The title II regulation requires public entities to " administer Services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disability." 28 C.F.R. section 35.130(d). The preamble discussion explains that "the most integrated setting" is one that " enables individuals with disabilities to interact with non disabled persons to the fullest intent possible [.]" 28 C.F.R. pt. 35, App. B (2011).

40. Regulations implementing Title II of the ADA feather prohibits public entities from utilizing " criteria or method of administration" "[t]hat have the effect of subjecting qualified individuals with disabilities to discrimination" or

"[t]hat have the purpose or effect or defeating or substantially impairing accomplishment of the objectives are the public entities program with reject to individuals with disabilities [.]" 28 C.F.R. section 35.130(b)(3); Accord 45 C.F.R. Section 84.4(b)(4) (Rehabilitation Act).

41. In **Olmstead,** D Supreme Court affirmed that Title II prohibits the unjustified segregation of individuals with disabilities. The court explained that it holding " reflect two evident judgment." 527 U.S. at 600. "First, institutional placement of person who can handle and benefit from community settings perpetuates unwarranted assumption that persons so isolated are incapable or Unworthy of participating in community life." **ID.** "Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contact, work opportunities, economic independence, emotional advancements, and cultural enrichment." **ID** at 601.

42. Under **Olmstead,** public entities are required to provide Community Based Services when (a) set services are appropriate, (b) the affected persons do not oppose community-based treatment, and (c) Community based Services can be reasonable accommodated, talking into account the resources available to The Entity and needs of other persons with disabilities. **ID.** At 607.

43. CRIPA prohibits the United States to initiate actions to violate the rights of individuals confined to psychiatric institutions, owned, operated, or managed by a state, who have been deprived of their Statutory rights. **See** 42 U.S.C. section 1997

## FINAL ACQUISITIONS

### A.  STATE HOSPITALS ARE SEGREGATED . INSTITUTIONAL SETTINGS

40.  Mississippi operate for costly, publicly funded psychiatric hospitals located throughout the state: he Mississippi State Hospital, North Mississippi State Hospital, East Mississippi State Hospital, and south Mississippi State Hospital ( collectively " the state hospitals").

41.  The state hospitals are segregated, institutional settings that do not enable individuals living there to interact with non disabled persons to the fullest extent possible. Wow come find in these institutes, individuals are deprived of meaningful opportunities, such as the opportunity to choose friends, participate employment, or make choices about activities, food, or living arrangements.

42.  Individuals reside in the State Hospital live in close quarters with other persons with disabilities. They are assigned to small hospital rooms, often with roommate did not choose.

43.  The state hospital for as little opportunity for individuals with disability to interact with individuals without disability, apart from hospital staff.

44.  Individuals living in the state hospital have very little authority over their daily lives most aspects of their daily lives are regimented and limited by rigid rules and inflexible practices. These rules and practices include rates

restrictions, Rockford meal times, limited on the ability to have visitors, and limits on travel outside the facility. As a result, most aspects their daily lives are controlled by the institutions, and they have little authority, privacy, or meaningful opportunities to participate in the community.

45.  Physically, the state hospitals are isolated from the general community--they are secluded on large tracts of land and cut off from towns, restaurants, stores, and public transportatiion, enjoyed by the broader community.

46. .For instance, he Mississippi State Hospital, established in 1855 and originally known as the Mississippi State lunacy Asylum, is located on a 350 acre camp in Whitfield, Mississippi the state of a former state penal colony. The campus consists of over a hundred and thirty buildings and has its own Campus Police Department.

47.  The Mississippi state hospital employs approximately 1750 employees.

48.  The East Mississippi State Hospital, located in Meridian, employs approximately 1130 employees. It was founded in 1882 and was originally known as the East Mississippi Insane Asylum.

49.  The North Mississippi State Hospital, located in Tupelo, the South Mississippi State Hospital, located in Purvis, or built recently. He North

Mississippi State hospital opened in 1999 and the south Mississippi State Hospital in 2000. Each of these hospitals employees over a hundred full-time staff to cover its 50 beds.

### B.  Thousands of Mississippians and Cycle in and out of State Hospitals Each Year

50.  Thousands of adults with mental illness in Mississippi needlessly cycle in and out of the state hospitals each year because they do not receive the support they need in the community.

51.  These individuals receive care in a hospital setting away from families, friends, and other natural support, then return to their communities where they often get no or insignificant treatment, their symptoms get worse, they experienced a crisis, and they returned to the hospital.

52.  Not including forensic beds, the State Hospital have about 500 psychiatric beds. Collectively, they serve approximately 3,300 adults per year.

53.  The average length of stay in the short-term unit of the state hospital is 45 days.

54.  Repeat admission to the short-term units of the state hospitals are common.

55. One 27 year old man admitted to the Mississippi State Hospital on

randomly should I take de in March 2015 had 22 Pryor and missions to the hospital. Individuals with patient needs cycle through the state hospital over and over again, to say nothing of admissions to local emergency rooms, provide psychiatric hospitals, and jails. ("**GEORGIA ALLEN HEAD** has cycled in and out these facilities more than the 27 year old man.")

56.  For example, over 55% of the 206 adults in the short-term unit at the Mississippi State Hospital on a randomly so like today in 2014 had three was he been admitted two or more times, and more than 11% have previously been admitted more than 10 times.

57.  Remissions typically result from insignificant services in the community and inadequate coordination between treating Professionals in facilities and those who support the individuals when they are in the community.

58.  Many individuals who are admitted to a state hospital or first held at a local acute Psychiatric Hospital, crisis stabilization unit, jail, or holding facility while awaiting a placement at a State hos Hospital, lengthening the overall time spent in an Institutional setting.

59.  The state often fails to ensure that there is a plan for providing services and support in the community that will meet the individuals needs and prevent readmission to the state hospital. Community Mental Health Cinders or core providers supporting people with mental illlness when they return to the

community, yet they often are not involved in treatment and discouraged planning. Other than scheduling a few follow-up appointment for the individual at the local provider, there is typically minimal coordination between the state hospital and the local provider. ("**in the matter of Georgia Ellen Head the local providers outside of the State ho Hospital commit Medicaid fraud while patient is in the state facility from 50,000 to 90,000 while the patient is in the State facility less than 45 days.**")

### C.  Individuals in the Mississippi State hospitals long-term unit remain there for years

60.  Over 100 individuals were institutionalized in the Mississippi State Hospital long-term units in fiscal years 2014. ("**Georgia Allen Head since 1999 she has spent multiple years locked away in the asylum at Whitfield.**")

61.  The average length of stay that year for individuals in the Mississippi State Hospital long-term unit was over 7 years. One individual was admitted to the Mississippi State Hospital in 1959, at the age of 20, and remain there over 50 years, at least until 2015.

62.  Individuals dually- diagnosed with mental illness and an intellectual or developmental disability he's been years in a state hospital due to the lack of Community Based Services to meet their needs.

63.  Some of these individuals who had been institutionalized at the

 **to come home on her medication December 8th of 2017")**

66. Mississippi State Hospitals failed to offer appropriate treatment and discharge planning necessary to successfully transition individuals to the community. Just charge plans are frequently boilerplate and disconnected from the skills individuals need in order to live in the community. (**Georgia Ellen Head has lost her house in Mobile Al due to the fact she has been ran through all the State Hospitals so the could collect state-funded money and Medicaid fraud!**")

### D. Mississippi Administration of its Service System has Canceled Unnecessary Segregation of Individuals in State Hospitals and Place Others at Serious reRisk of Unnecessary Institutionalization

67. Through the Mississippi division of Medicaid and Department of Mental Health, the state determines what services will be provided, where services will be available, how services will be funded, who will be eligible for services, how service quality will be evaluated, and what providers are permitted to offer the service.

68. The Mississippi Department of Mental Health funds and operates the State ho Hospitals.

69. Mississippi Department of Mental Health and division of Medicaid plan contracts, found, regulates, and oversees the community mental health system that provides community-based alternative to the State Hospitals.

Mississippi State Hospital have been placed in a nursing facility on the same grounds at the State Hospital. ( " **Due to the lack of communication the family of Georgia Ellen Head are unaware of where she is placed within the facility and why!")**

64.  While the state has reduced the number of long-term beds at the state hospital, it has simultaneously transferred many individuals to other long-term, segregated settings, including other state ran facilities, nursing facilities, and Personal Care Homes.  It has also discharged individuals from the state hospital to homelessness and other unstable environments. (" **due to the fact of these facilities holding my mother against her will for almost 10 months they have made her lose her house with no regard. It has been stated that she not allowed to have a house buy multiple staff at the facilities and conservator!")**

65.  Other individuals were discharged to the central Mississippi residential Center, a state-funded residential behavioral health program for adults with mental illness that looks much like a state hospital. The Center consists of multiple buildings on an isolated campus in Newton, Mississippi with a capacity to serve 68 individuals at a given time. The average length of stay at the center is 545 days; however, several individuals have lived at the center for 5 years or more, many of whom actually spend much of their lives and a State Hospital. ("**Georgia Allen Head has been ran through all the State facilities and held against her will now for almost 10 months straight. After family was told she was stable**

70.  The state office community-based Mental Health Services primarily through 14 Regional Community Mental Health Centers ("CMHCs"). The CMHCs are principal service provided with whom the Mississippi Department of Mental Health and the division of Medicaid contract of furnish a range of community-based mental health and substance abuse services to persons with disabilities, including mental illness. The Mississippi Department of Mental Health is responsible for certifying, monitoring, and assisting me CMHCs.

71.  The CMHCs are required to offer certain mental health services, including Psychiatric Services, individual and group therapy, community-based support service, prices Service, and peer support service. Some CMHCs also offer more intensive services, like Assertive Community treatment, supported employment, and residential services. In addition, Department of Mental Health pays the CMHCs to conduct free screening evaluations to determine whether individuals are eligible for admission to a state hospital.

72.  Department of Mental Health and division of Medicaid exercise control over the availability and quality of Community Mental Health Services in the State.

73.  The Mississippi division of Medicaid establishes the Medicaid services that will be available, defines the purpose of these Services, defines limits on the services, and gauges in utilization control, and determines the rate of those

services.

74.  The Mississippi Department of Mental Health certifies each CMHCs prior to it's selection as the designated provider, promulgates operational standard for all CHMCs, conducts reviews of CMHC operations, Awards grants funds to support specific community services, and requires financial and performance reporting.

75.  Numerous policies, practices, and actions by the state, including the Mississippi Department of Mental Health Division of Medicaid, had led to the unnecessary segregation of individuals with mental illness and state hospitals and placed many other individuals with mental illness at serious risk of institutionalization. Despite being aware that the unnecessarily relies on an institution model to serve individuals with mental illness, he state continues to discriminate against people with mental illness by failing to provide significant, integrated community-based Mental Health Services consistent with their individual needs. It has done so primarily by : (1) failing to provide significant community-based Mental Health Services throughout the state and (2) concentrating funding and it State hospitals rather than Community Based Services.

i.      **The state sales to provide significant community-based Mental Health Services throughout the state.**

76.  The state recognizes the Community Based Services, including

Psychiatric Services, individual and group therapy, intensive case management, crisis Services, peer support services, Assertive Community Treatment, supported employment, and permanent supported housing promote positive outcomes and prevent hospitalization among persons with serious mental illness. See, e.g., Mississippi Department of Mental Health, **Think Recovery Newsletter** 1, 6-7 (2015), available at http://www.dmh.ms.gov/wp-content/uploads/2015/09/MS -MS-Recovery-Recovery- Newsletter- Summer-2015. PDF (last visited January 13th 2016). Individuals with mental illness living in the community may need one or more of these Community Based Services at any given time to avoid unnecessary hospitalization. Yet to State those two significantly provide community-based Mental Health Services, for tickly and certain Geographic areas of the state, leaving thousands of people who are in the state hospital or at serious risk of entering these hospitals without the ability to access needed community-based treatment.

77.  In fiscal year 2015, nearly 5,500 individuals were screen for non- forensic Admissions and about 3,300 were ultimately placed in a state hospital. More individuals could be converted from costly, segregated institutional placement at the state hospital NC State increases the ability of Community Based Services.

78.  Crisis services are a critical part of a successful Community Mental Health Services because effective crisis professionals can divert individuals from institutionalization and Link them quickly to need it Community Based Services. For instance, Mental Health clinicians offering mobile crisis Services go into the

community to meet individuals at the site of a crisis and offer interventions to prevent hospitalization. Crisis professional can also work closely with law enforcement to help divert individuals from arrest and incarceration or civil commitment.

79.  The State acknowledges that " [w] without mobile Crisis Intervention, someone experiencing a mental health crisis may end up in a hospital, inpatient psychiatric program, a holding facility or even a jail." Mississippi Department of Mental Health, Mississippi Profile 9 (2015). Available at http://www.tmh.orgMs. gov/wp-content/uploads/2015/03/Mississippi-profile-winter-and-spring-2015. PDF (last digit January 13th 2016).

80.  The state, however is not ensuring that Dee critical face-to-face interventions are uniformly available two individuals in crisis across the state. While one CMHC reported over 3,000 face--to-face mobile crisis interviews and fiscal year 2015, another CMHC, with a nearly identical regional population, reported fewer than City face-to-face interviews all year.

81.  Assertive Community Treatment ("ACT") is another critical community basedal Health Service that is not significantly available in Mississippi. It is an intensive team-based treatment model that provides multidisciplinary, flexible treatment and support to people with mental illness to increaseincrease integration and prevent hospitalization. Substance Abuse and Mental Health Services Administration, Assertive Community Treatment: Building

Your Program 5, Pud.No.SMA08-4344 (2008).

82.  The state recognizes the importance of ACT and helping individuals with serious mental illness remain stable and they community and void unnecessary institutionalization period a Mississippi Department of Mental Health press release about the states ACT program stated, "[I]n the four years DMH has had [ACT] teams operating, they have been extraordinary successful in helping individuals and Recovery by ensuring they can stay and participate in the communities of their choice." Further elaborating on the success of the program, the Department of Mental Health Executive Director, Diana Mikula, stated, " Recovery not only benefits the individual, it benefits the entire community... Evidence-based program such as [ACT] Teams are essential kids keep individuals in the community and help them continue on the road to recovery" Mississippi Department of Mental Health, Mississippi Expand Program of Assertive Community Treatment Teams, available at http://www.dmh.ms.gov/Mississippi-expend- program-of-assertive-Community-treatment-/ last Thursday January 13th, 2016).

83.  In spite of the recognition comedy state only offers ACT services in about half of its 14 community Mental Health Region Statewide, and the existing team survey very small number of individuals.

84.  ACT kings are designed to serve between 80 to 100 individuals each, so the existing teams could serve between 640 and 800 individuals while

implementing the services with fidelity to the evidence-based model. Due to poor implementation of the service, the teams remain underutilized.

85.  In fiscal year 2015, the state served only 189 people with ACT through its 8 Teams, despite the overwhelming need for the service.

86.  The absence of ACT conspiracy is particularly palpable in the Jackson area. Hinds in Rankin County's, covering the Jackson metropolitan area, send more people to state hospital for treatment than any other counties in the state of Mississippi; in fiscal year 2015, 307 people from Hinds County and 206 people from Rankin County where is served in the state hospitals. Together the two counties account for about 17% of the people served in the state hospitals, yet neither counties had and ACT team until 2015. **("HARRISON HANCOCK AND JACKSON COUNTY HAS SERIOUS ISSUES WHEN IT COMES TO TREATMENT AND KEEPING THEIR PATIENTS OUT OF HOSPITALS. IT HAS BEEN FOUND THAT THE GULF COAST MENTAL HEALTH FACILITIES COMMIT MEDICAID FRAUD ON THEIR PATIENTS THAT ARE COMMITTED TO THE STATE FACILITIES!")**

87.  An ACT team was established in Hinds County in 2015, but because it's only served 17 individuals, it had little impact on reducing the number of State Hospital admissions. No. ACT team service Rankin County.

88.  The state has begun to establish a certified peer support program through which individuals who have lived in Mental illness assist others with mental

illness to increase resiliency, manic symptoms, build community living skills, and
work Ford recovery in order to live integrated lives in the community and avoid
hospitalization. The state recognizes that pierce support can be just as valuable
as other professional team services for people with mental illness.

89.  Peer support services are not significantly available throughout the state,
however. In fact, two of the CMHC regions  each employ only a single Pierce
support specialist. Over 450000 people live in the 14 counties served by those
CMHCs.

90.  Permanent supportive housing is another service that enables people with
serious mental illness to avoid hospitalization. As its name implies, permanent
support housing is (1) permanent, meeting "tenants may live in their own home
as long as they meet the basic obligations of tenancy [;]" (2) supportive, meeting
"tenants have access to support services that they may need and want to retain
housing" and (3) housing, meeting " tenants have a private and secure place to
make their home, just like other members of the community, with the same
rights and responsibilities." Substance Abuse and Mental Health Services
Administration, Permanent Supportive Housing: Building Your Program 1, Pub
 No. SMA – 10-4509 (2010)

‑

91.  The state recognizes he needs for permanent support housing as an
effective evidence-based services for individuals with serious mental illness that

enables people to live  integrated lies in the community and avoid

institutionalization. See Technical Assistance Collaborative. <u>A Statewide Approach

For Integrated Supportive Housing in Missi ssippi</u> 1-3 (2014); House Bill No. 1563

(2015)


92.  the state of knowledge is, however, the significant payment support

housing is not available in Mississippi to meet the needs of persons with mental

illness. The state calculates that over 7,000 people are candidate for permanent

support housing, and that it would need to provide at least 2900 slots to meet

the national rate of permanent supportive  housing availability. Still, the state has

provided funding for what they estimate will support only 200 payment support

housing slots for financial year 2015 and 2016. See House Bill No. 1563 (2015).


93. The insufficiency community service coupled with inadequate State

Hospital discharge planning places people at serious risk of readmission to a State

Hospital. Individuals are frequently discharged from a state hospital without

significant Community Support in place and to inappropriate housing, such as

homeless shelters. For instance, in financial year 2014, at least 56 individuals

were discharged to homelessness.


94. Mississippi failure to develop a significant high quality supply of

Community based Services and failure to conduct adequate discharge planning

from each state hospitals for the community forces individuals mental illness to

obtain necessary services at inappropriate and costly venues, such as emergency rooms, jail and psychiatric hospitals.

ii.      The State fails to find sufficient Community based Services and instead

focuses funding on institutional settings

95.   The State reliance on institutional care is reflected in it's spending.

96.   In spite of the challenging financial environment, he state has continued to concentrate funding on costly institutional care at State facilities when it good provide appropriate, expensive services in the community and share the cost of many of the services with the federal government

97.   Virtually all of the cost of the state facilities are paid for with state general funds. When the state provides community alternatives though it's Medicaid Program, however, the federal government provides matching funds; the federal government pays for 73% of all Medical expenditures in Mississippi. Federal Medicaid dollars are not available to fun inpatient psychiatric Services for adult under 65 in the state hospital, but would be available to all Medicaid beneficiaries receiving eligible community-based services.

98. in financial year 2015, the Mississippi Department of Mental Health spent 200 and 2.5 million on the state hospitals. In addition to the State Hospitals, the State has concentrated resources in it 68 bed Central Mississippi residential Center and financial year 2015, the State spent 5.8 million to operate that Center.

99. The State reports that they cost of one individual in the state hospital is over $470 per day on average. Based on the CMHC Billing Guidelines, the approximate cost of the State ( minus the federal portion) to serve Medicaid eligible individuals with the most intensive needs who instead receive ACT in the Community is approximately $30 per day. And many individual served at the state hospital will not need the most intensive and most expensive Community based services in order to avoid unnecessary hospitalization.

100. Mississippi Legislator's Joint Committee on Performance Evaluation and Expenditures Review Committee reported in 2008 that, generally, institution-based Services cost more per client then Community based Services and that the State focus on institution-based care " represent a much more expensive service delivery model than does community-based care." Joint Legislative Committee on PEER, Report to the Miss. Legislature No. 5-11, Planning for the Delivery of Mental Health Services in Mississippi: a Policy Analysis 55 (2008).

101. The State recent spending on new facilities in the East Mississippi State Hospital is another example of the significant investment in the State Hospitals.

In the last few years, the State has funded several new buildings at East Mississippi State Hospital, with the newest one currently under construction. In 2014, the state open a new $7 Million dining facility. The state is currently spending $14 Million to build a brand new 60 bed unit and a central mechanical building.

102.  Even though these State modified its Medicaid State Plan in 2012 to make some critical community-based Mental Health Services Medicaid reimbursable, including mobile crisis, ACT, and peer support, the services are still not being offered in sufficient quality. For instance, in financial year 2014, Medicaid only reimbursed providers for serving 60 people with ACT and 533 people with peer support. Yet offering these Medicaid reimbursable Services makes economic sense given the federal government matching funds.

103.  Mississippi credit serve individuals with mental illness in the community by maximizing existing resources—both by redirecting spending from segregated, institutional settings to community-based programs and 5 fully implementing the State Medicaid State Plan service.

E.  **Mississippi is Aware That it Unnecessary Relies on Institutional Settings
    and has (NOT) Taken the Action needed to Remedy the Violations of Law**

104.  The state has long been aware of the failure of the mental health
system. In recent years, Mississippi has recognize, and reported on, these dates
significant reliance on institutional care to serve persons with disabilities,
including mental illness.

105.  In 2008, the Mississippi Legislator's PEER Committee issued a
comprehensive report that concluded that the Board of Mental Health has not
focused on developing adequate community-based programs and reallocating
resources to meet the engagement needed a person with mental illness in
Mississippi. Joint Legislative Committee on PEER, Report to the Miss. Legislator
No.511 , **Planning for the Delivery of Mental Health Services in Mississippi:  A
Policy Analysis 54-56 (2008) .** The PEER Committee concluded that Mississippi
was out of step with national trends and was failing to meet the needs of persons
with disability in integrated Community settings. Id. at 1 ( "Although the mental
health environment in the United States has dramatically changed from an
institution base system to a community-based system in recent years, Mississippi
mental health system has not reflected in shift and service delivery methods.").

106.   The PEER Committee recognized that, due to the ADA and the Olmstead
decision, "the state will be forced to move towards providing more Community
based care in the near future."
Id. The PEER Committee concluded that the state was not in a good position to

address outstanding issues because the Mississippi board of Mental Health " has not aggressively sought plan for reallocation of resources to meet emerging needs in addition to efforts to seek additional finding to meet these needs.....[thus,] allowing the development of community oriented programs cue ball behind." Id.

107.  In June 2014, the PEER committee again found that the state has missed opportunities to provide Community based Services. In a report related to the closure of the Mississippi State Hospitals Community Service Division, the PEER committee noted that the Department of Mental Health redirected resources from the closure of community-based programs into the state hospitals, thus "forgo[in] the opportunity to redirect the resources yielded from closure of the [community services] division into providing community-based mental health care." Joint legislative Committee on PEER, Report to the Miss. Legislator No. 584 A Review of the Closure of the Mississippi State Hospitals Community Service Division vii (2014).
WE ARE AT THE END OF 2018 AND TO THIS DAY NOTHING HAS BEEN DONE!

108.  In a May 2015 report, the PEER committee again reiterated that" Mississippi will be forced to move toward providing more community-based Mental Health care and the near future" and recommended that " [t]he Department of Mental Health and Mississippi State Hospital should gather the appropriate data setting regarding the mental health needs of the hospital, the communities and East 8th in order for the Department of agriculture it's

Community based Services strategy, design it's implementation process, and reallocate it's resources." Joint Legislative Committee on PEER, Report to the Miss. Legislator No. 593, **staffing of psychologist at the Mississippi State Hospital in a changing Mental Health Service Delivery Environment** 1 (2015) **WE ARE AT THE END OF 2018 AND TO THIS DAY NOTHING HAS BEEN DONE!**

109.  As early as 2001, the state acknowledged the need for significant change and it's Olmstead Plan. The Olmstead Plan, develop in conjunction with various stakeholders, was entitled Mississippi Access to Care ("MAC"), and was submitted to the Mississippi legislator on September 30, 2001. Mississippi Access to Care Plan (2001), *available at* https://www.medicaid.ms.gov/wp-content/uploads/2013/12/MAC_2001Plan.pdf ( last visited January 14th 2016). The overall stated purpose of the plan was to " create an individualized p service and support system that enables individuals with disabilities to live and work in the most interested setting of ("THEY ARE CHOICE"). IT IS OUR VISION THAT ALL MISSISSIPPIANS WITH DISABILITIES WILL HAVE THE SERVICE AND SUPPORT NECESSARY TO LIVE IN THE MOST APPROPRIATE AND INTEGRATED SETTING POSSIBLE." Id at 9

**THIS IS THE END OF 2018 AND NONE OF THIS HAS BEEN MET BY THE STATE OR ANY OF THE FACILITIES INVOLVED**

110.  Among the many changes that the plan identified as necessary to realize this vision were the development of community housing alternative 4 / 1,000 adults with serious mental illness, the explanation of these states supported

employment program, and the explanation of individual case management. I'd. at 22,28,39.

111. After 10 years in which the state did not engage in any meaningful Olmstead planning, the State launched MAC 2.0 in 2013. MAC 2.0 is approximately an umbrella for work groups related to suspended specific Federal Grant programs.

112.  The first and only implementation report explained the while some agencies were attempting to implement the reforms identified in the States Olmstead Plan, he state had not funded the plan and this made full implementation impossible. MAC Implementation Report #1 5 (2003).

113.  The MAC 2.0 initiative has not resulted in a reversed Olmstead Plan. See Mississippi Division of Medicaid, Mississippi Access to Care (MAC) 2.0 *available at* http://www*medicaid.ms.gov/mississippi-access-to-care-mac-2-0/ (last visited January 14th 2016).*

114.  The Department of Mental Health's current strategic plan also recognizes that expansion of Community based Services and support is critical. The strategic plan is aimed to " moving toward a community-based surface system." Mississippi board of Mental Health, FY16-FY18 DMH Strategic Plan 1.

115.  He goes in the current plan highlights the continued need for reform. The plan calls for providing support in the community " to prevent out-of-home placement [;]" ensuring access two crisis Services to " divert individuals from more restrictive environments such as jail, hospitalization, ECT [;]" providing adults with serious mental illness access to "appropriate and affordable housing [;] and using peer support to " assist individuals in regaining control of their lives and their own recovery process [.]" Id. at 8.

**The state of Mississippi intentionally made Georgia Allen Head lose her home in Alabama Mississippi!**

116.  **NEARLY 18** years after development the State's Olmstead Plan, the State still is not meeting the obligations under the ADA to serve adults with serious mental illness in the most integrated setting appropriate.

**F.  INDIVIDUALS WITH MENTAL ILLNESS IN STATE HOSPITALS OR AT SERIOUS RISK OF HOSPITALIZATION ARE PATIENTS WITH DISABILITIES WHO ARE *QUALIFIED TO RECEIVE SERVICES IN MOORE INTEGRATED SETTINGS AND* DO NOT OPPOSE IT**

117.  individuals admitted to or at serious risk of entering into State hospitals have mental illness, such as schizophrenia, bipolar disorder, depression, and others, that subsequently limit one or more major life activities, including personal Care, working, concentrating, thinking, and sweeping. They are there for person but disability for purpose of the ADA.

118.  A vast majority of the individuals with mental illness in the State Hospitals and those at serious risk of entry into those hospitals are qualified to receive Mental Health Services in the community and can be served and more integrated settings.

119.  people in the state hospitals and those at serious risk of entry into these hospitals are similar to people with mental illness who receive services in the community. They have similar diagnosis and needs as people who live successfully and more integrated community base settings with the type of support and services that currently exist in the states Community Mental Health system.

120.  Persons with mental illness at the state hospital would not opposed moving to and receiving services in integrated settings if APPROPRIATE Community based Services were available and If individuals had a realistic opportunity to do so. **GEORGIA ELLEN HEAD HAS BEEN REPEATEDLY TELLING STAFF SHE WANTS TO GO HOME WITH HER DAUGHTER AND THE FACILITIES HAVE REFUSED TO HEAR HER WISHES OF HER OR HER DAUGHTER!**

121.  Individuals in the state hospital normally request to leave the facility in return through their communities.
**THE STATE FACILITIES IGNORES THE WISHES OF THE PATIENT SO THAT THEY CAN COLLECT FRAUDULENT FUNDS THROUGH MEDICAID AND OTHER ASSISTANCE OF STATE-FUNDED MONEY!**

## G. THE STATE CAN PROVIDE SERVICES IIN INTEGRATED SETTINGS BUY REASONABLY MODIFYING ITS MENT.AL HEALTH SERVICES SYSTEM

122.  The State can provide services in integrated Community settings to people with mental illness who are currently held  in state hospitals and two people with mental illness at serious risk of entering into State hospitals through responsible modifications to it Mental Health Services system.

**Georgia Allen Head has been held against her will for a year after her release date so fraudulent money could be collected for the State facilities!**

123.  the type of services needed to support people with mental illness and community-based settings already existing  Mississippi community-based Mental Health Services system.

124.  However, these services are not significantly provide it to meet the needs of persons who are unnecessarily institutionalized or those at serious risk of institutionalization.

125.  With responsible modifications, including expansion of the capacity to provide existing service, reallocation of funds from institutions and maximization of the state's Medicaid program, Mississippi Community Mental Health Services would be able to meet the needs of people with mental illness in state hospitals or at serious risk of being placed in a state hospital.

## H. THE UNITED STATES INVESTIGATIONS

126. After receiving and allegation of discrimination, in 2011, the United States investigated the state of Mississippi compliant with the title II of the ADA. On December 22nd, 2011 the United States issues it's finding and conclusion in a letter to the governor, consulting that the state fails to provide services to adults with mental illness in the most integrated setting appropriate to their needs as requested by the ADA and <u>Olmstead.</u> Letter from United States Department of Justice, civil rights division to the Honorable Haley Rm Barbour ( Dec. 22, 2011). The letter reported in detail the finding of the United States investigation provided the state notice of its failure to comply with the ADA, and outline the steps necessary for the state to meet the obligations presented to federal law. **<u>THIS IS 2018 AND NOTHING HAS BEEN DONE IN THE STATE OF MISSISSIPPI TO MAKE THEM ABIDE BY THE ADA INSTEAD THESE FACILITIES ARE FALSIFYING</u>** **<u>*DOCUMENTATION AND HOLDING PEOPLE AGAINST THEIR WILL FOR STATE-*</u>** **<u>FUNDED MONEY! MR. LYNCH AT THE ATTORNEY GENERAL'S OFFICE STATED ON A RECORDED LINE IT IS OKAY TO DEFRAUD THE TAXPAYERS 230 MILLION DOLLARS AS LONG AS IT DOES NOT AFFECT YOU!</u>**

127.  Neither less, the state continues to fell to ensure that adults with mental illness are served in the most integrated setting appropriate to their needs, or that their discharge planning needs are met in order to transitions successfully into Community settings.

132.  These dates actions continue discrimination in violation of Title II of the ADA, 42 U.S.C § 12132and it's implementing regulations at 28 C.F.R. pt 35

133.  The axe and emissions alleged in paragraph 1 through 128 can you a petition or practice and infringed upon the legal rights of individuals residing in or confined to institutions in Mississippi, constituting resistance to their full enjoyment of their rights, privileges, or immunities secured or protected by the ADA, and depriving persons in isolation of such rights, privileges, or immunities.

## PRAYERS FOR RELIEF

**The Attorney General is authorized under 42 U.S.C. §§ 1997 and 12131 et. To seek equitable and declaratory relief.**

WHETEFORE , Angela Ward and Georgia Head prays that the court:

**A.  Grant judgment in favor of the United States on its complaint and declare that the defendant has violated Title II of the ADA, 42 U.S.C.§§ 12131 et. Seq;**

**B.  Enjion defendant from:**

*1. Discriminating against adults with mental illness in* Mississippi by failing to provide services, programs, or activities in the most integrated settings appropriate to their needs;

128. The United States engaged in multiple round of negotiations with the State beginning in the spring of 2012. The United States has demanded that compliance cannot be secure by voluntry means. Judicial action is, therefore, necessary to remedy the violations of law identified in the United States" letter and to vindicate the rights of adult with mental illness in or at serious risk of institutionalization in State Hospitals.

## COUNT 2

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITY ACT
## 42 U.S.C. §§ 12131 et seq.

129. The allegations of paragraphs 1 through 128 of the complaint are hereby realigned and incorporated by reference

130. Defendant, State a Mississippi, is a public entity subject to Title II of the ADA, 42 U.S.C.§ 12131(1)

131. The state violates the ADA by administering the states Mental Health Service system in a manner that denies qualified adult with mental illness the benefit of the states Mental Health Services, programs, or activities in the most integrated settings appropriate to their needs and buy belly 2 responsibly modify the State Mental Health Service system to avoid discrimination against adults with mental health disabilities. 42 U.S.C. § 12132; 28 C.F.R. 35 130

**2.** Failing to provide appropriate integrated community service programs, or activities to adults with mental illness in Mississippi, consistent with their individual needs to avoid placing their individuals at serious risk of institutionalization of State hospitals and

**3.** Taking appropriate action necessary to remedy the violations of Title of the ADA

**C.** Issue a declaratory judgment that defendant has violated Title II of the ADA by failing to make responsible modifications to service, programs, or activities for adults with mental illness to enable them to obtain the services, programs, and activities they required to make it in the most integrated setting appropriate to their needs;

**D.** Order such other appropriate relief as the interest of Justice may require. RELEASE GEORGIA ALLEN HEAD IMMEDIATELY!!

Angela Ward pro see

Date Dec 1st 2018

Angela Ward
1916 Greater Ave
Biloxi, Ms. 39531